HENRY JONES, APPELLANT, v. E. L. KELLY, TRUSTEE, ET AL., APPELLEES.

FILED APRIL 23, 1908.   No. 15,156.

Deeds: CANCELLATION: DURESS.  Evidence examined, substance of it set forth in the opinion, and *held* sufficient to sustain the findings and judgment of the district court.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE.  *Affirmed.*

*John M. Macfarland* and *B. S. Baker,* for appellant.

*C. C. Wright, W. B. Kelly* and *B. H. Dunham, contra.*

FAWCETT, C.

Plaintiff brought suit in the district court for Douglas county against E. L. Kelly, trustee of the Reorganized Church of Jesus Christ of Latter Day Saints, E. L. Kelly, and the Reorganized Church of Jesus Christ of Latter Day Saints, to set aside a deed to the north one-half of lot 11, block 12, in E. V. Smith's addition to the city of Omaha, executed and delivered by him April 9, 1899, to defendant E. L. Kelly, trustee of the church, and his successors in office, for the use and benefit of said church. Plaintiff based his right to have the deed vacated upon

two grounds: (1) That at the time of the execution of the deed, plaintiff was *non compos mentis* and unable to transact business; (2) that the deed was procured by fraudulent representations and by duress. After a full hearing the district court found all of the issues in favor of the defendants, and dismissed plaintiff's suit, with costs.

It will be observed that no propositions of law are involved, but that the case turns entirely upon questions of fact. We have read the entire record, and the evidence so overwhelmingly preponderates in favor of the finding made by the district court that it would be a waste of time and space to set it out in this opinion. The evidence clearly establishes the following facts: Plaintiff, at the time of the execution of the deed in controversy, had no children of his own. His wife had a son by a former husband, who was married and had a family. Some time prior to the execution of the deed this son and his family moved to Omaha. They had not been in Omaha very long until the stepson and his mother, plaintiff's wife, began to importune plaintiff to make a deed of all of his property to the stepson; the stepson to support the old couple as long as they lived. After consultation with his friends plaintiff declined to make such a deed. His wife and stepson continued to annoy him about the matter until the trouble became serious. Plaintiff, who, it would seem, was a devout member of the defendant church, declined to employ an Omaha lawyer, when advised so to do by one of his friends, stating that he would send for Mr. Kelly, defendant herein, bishop of his church, in whom he appeared to have great confidence, and who, it also appears, had been at one time a lawyer of more or less prominence in the state of Iowa. Mr. Kelly was sent for. When he arrived upon the scene a deed had already been made out to the stepson for one house and lot. The deed was an unconditional warranty deed. At the time of examining the deed they told Mr. Kelly that the stepson was to pay plaintiff and his wife $5 a month as long as they lived. Upon the advice of Mr. Kelly, he (Kelly) inserted a reservation of

that kind in the deed before it was signed and acknowl-
edged, thus protecting plaintiff's rights as against the
stepson.    Plaintiff then proposed to deed the property in
controversy here to the church.   Mr. Kelly declined to re-
ceive this donation until he could talk the matter over
with the plaintiff's wife.    After having a conversation
with her, and she being of the same mind as her husband,
Mr. Kelly prepared the deed, inserting in it this clause:
"The said Henry and Jane Jones reserving for themselves
the rents and profits of the said described premises during
their natural lives or so long as either shall live."   At the
same time, and at the request of plaintiff, Mr. Kelly pre-
pared a third deed to a niece of plaintiff for another piece
of property, in which deed he inserted the same reserva-
tion as to the rents and profits during the lives of the
grantors.   Before Mr. Kelly left the city at that time plain-
tiff showed him a certificate of deposit for $500 in an
Omaha savings bank, then in process of liquidation, upon
which he, plaintiff, had been unable to obtain any money.
Mr. Kelly took charge of the certificate for him, and finally
succeeded in obtaining a draft for the amount.    At the
time plaintiff executed the deed in controversy he and Mr.
Kelly discussed the matter as to how the donation should
be credited, and it was finally decided, on plaintiff's sug-
gestion, that one-half of it be credited generally on the
church account, and the other one-half on account of an
Old People's Home which was being maintained by the
church at Lamoni, Iowa; plaintiff stating at the time that,
if he made the donation in that way, then, if he should
ever have to go to the home, he would feel that he had
paid his way.   Not very long after executing the deeds
plaintiff went to the home at Lamoni, where he remained
for about six months.   During the time he was there his
wife died.   After remaining in the home for about six
months he left it and returned to Omaha.   During the time
he was in the home a Mr. Huff, a deacon in the church,
collected his rents.   When he decided to leave the home he
called upon the defendant Kelly for the draft which Mr.

Kelly had obtained for his deposit in the defunct savings bank, which draft Mr. Kelly promptly delivered to him, reserving nothing whatever for his trouble and services in the matter. On his return to Omaha he called upon Mr. Huff, for a settlement of the rents during the time he had been away, which settlement Mr. Huff promptly made, turning over to him all moneys in his hands. Some time after that the plaintiff, then over 80 years of age, married an old lady who had been an inmate of the home at Lamoni during the time he was there. Through her instigation he got his draft cashed. Out of the proceeds of the draft he kept $200, and gave her the remainder. Trouble soon arose between them, and they separated. Later on, application was made to the county court of Douglas county for the appointment of a guardian for plaintiff, and such appointment was made. This suit is being prosecuted by the guardian.

It will be seen from the above statements that up to this time the church has never received a cent of money from plaintiff, nor any benefit whatever from the property conveyed to it. Plaintiff is still entitled to receive, and his guardian doubtless is receiving, the rents and profits of the property conveyed to the defendants, and of the property conveyed to the niece, and $5 a month for the property conveyed to the stepson, who is now deceased. In addition to all this, plaintiff has a right, at any time he sees fit, to go to the home at Lamoni, Iowa, and remain there the rest of his days. The old gentleman himself testified when on the witness stand that the home is a nice home, well kept, everything clean, and every kindness shown. The only objection which he seems to have had to the home was that he was not entirely satisfied with the board. But whether the home is a satisfactory place or not is immaterial. He has the entire income from all of his property, just as he had before the deeds were executed. He has parted with nothing except the right to sell or incumber the property, a right which, in our judgment, he was very fortunate in having surrendered by the

deeds above referred to. The evidence falls far short of establishing such a weakness of mind as would entitle plaintiff to have the deed set aside on that ground, and there is no testimony in the record, rising to the dignity of evidence, that defendant Kelly, or any of the officials of the defendant church, ever attempted, by duress or otherwise, to influence plaintiff in the slightest degree. That the stepson and his mother made trouble for the old gentleman is undoubtedly true; but they are not before us, and defendants were in no manner responsible for their reprehensible conduct. Without pursuing the matter further it is sufficient· to say that the conclusion reached by the court was the only one possible under the evidence.

The judgment of the district court is right, and should be affirmed.

CALKINS and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.